# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TOM KASALO, | ) |
| Plaintiff, | ) |
| | ) Case No. 09 C 2567 |
| vs. | ) Magistrate Judge Sidney I. Schenkier |
| | ) |
| MONCO LAW OFFICES, S.C., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[1]

On April 28, 2009, Tom Kasalo filed a four-count complaint against Monco Law Offices, S.C. as a result of Monco's efforts to collect an alleged $495.73 debt that Mr. Kasalo allegedly incurred with Associated Bank. As amended (doc. # 20), the complaint asserts that Monco has violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Count I); the Illinois Collection Agency Act, 225 ILCS 425/1 *et seq.* (Count II); the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510 *et seq.* (Count III); and the Illinois Consumer Fraud Act, 815 ILCS 505 *et seq.* (Count IV).

Pending before the Court is Monco's motion to dismiss the amended complaint in its entirety, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) (doc. # 21). In response to the motion, Mr. Kasalo has withdrawn all of his state law claims, which resulted in the dismissal of Counts II-IV by an order dated November 12, 2009 (doc. # 30). By that same order, with agreement of the parties, the Court has stayed discovery pending a ruling on the motion to dismiss. For the reasons that follow, the motion to dismiss as to Count I is granted in part and denied in part.

---

[1] By consent of all parties and pursuant to 28 U.S.C. § 636(c)(1), on July 30, 2009 this case was transferred to this Court by the Executive Committee for all proceedings, including the entry of final judgment (doc. ## 14-15).

**I.**

Rule 12(b)(6) requires dismissal if the allegations in the complaint, taken as true and with all reasonable inferences drawn in favor of the party making the claim, do not state a claim for which legal relief can be granted. To determine if the allegations are sufficient to state a claim, a reviewing court must determine if they make the asserted claim "plausible on its face." *Ashcroft v. Iqbal*, ___U.S.___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). Although the material facts alleged must be taken as true and construed favorably toward the plaintiff, this rule does not apply to legal conclusions, supported only by conclusory statements. *Id.*

**II.**

The following facts alleged in Count I of plaintiff's amended complaint are those that we consider material, and that we take as true for purposes of the present motion. Plaintiff is a "consumer" and defendant is a "debt collector," as those terms are defined by the FDCPA (doc. # 20: Am. Compl. ¶¶ 4-5). Sometime prior to January 9, 2008, "plaintiff incurred an alleged financial obligation for personal, family or household purposes," which constitutes an alleged "debt" as that term is defined by FDCPA (*Id.* ¶ 6). "[O]n information and belief," this "debt included charges incurred on Associated Bank account number ******6511 . . . for Internet gambling bets allegedly made by the plaintiff to an off-shore Internet gambling website via, *inter alia*, a company called "SB Services" (*Id.* ¶ 7).

Plaintiff alleges that he did not pay the alleged debt because "it included charges that Plaintiff did not authorize" (Am. Compl. ¶ 8) – without identifying just what those charges were. However, the alleged debt of $495.73 included $153.00 in charges billed as "SB Services" that plaintiff claims are void because they "stemmed from bets placed on Internet gambling sites owned by off-shore companies" (*Id.*, ¶ 19 and Ex. A). Plaintiff alleges – again, on information and belief – that "Associated intentionally authorized and allowed cash deposits from [p]laintiff's account to be transferred to the accounts of various offshore Internet gambling company accounts for the purpose of effecting gambling transactions. Once the funds were deposited to an Internet gambling company account, said funds could only be used for gambling transactions" (*Id.*, ¶ 20). Plaintiff does not deny that he placed those Internet gambling bets, or that he obtained the funds from Associated in order to do so. Rather, plaintiff claims that the alleged debt was null and void, and thus uncollectible, because it constituted a "gambling contract" under Illinois Law (*Id.*, ¶ 21).

Thereafter, plaintiff received a collection letter sent from defendant, dated January 9, 2008, which stated that plaintiff owed a debt in the amount of $495.73, and which had been assigned from Associated to defendant (Am. Compl. ¶ 9). The parties do not dispute that out of the $495.73 alleged debt, the only amount at issue is the $153.00 in charges from SB Services (*Id.* ¶ 7, 19; Def.'s Mem. at 1). Defendant asserts, and plaintiff does not deny, that the remaining part of the debt ($342.73) is undisputed (Def.'s Mem. at 1).

On January 11, 2008, one of plaintiff's attorneys called defendant to inform defendant, *inter alia,* that defendant had been "repeatedly" calling the wrong telephone number in its attempts to contact plaintiff to collect the alleged debt. Plaintiff alleges that this number belonged to his parents (Am. Compl. ¶ 13). On July 8, 2008, defendant again called that number, after nearly six months

3

had passed and after no further information had been received from plaintiff's attorneys and three calls from defendant had gone unreturned (*Id.* ¶¶ 15-16 and Ex. D). On September 15, 2008, during a telephone conversation relating to the alleged debt, plaintiff's attorney again asked the defendant to "cease calling" plaintiff's parents' phone number. Plaintiff does not allege that defendant made any further telephone calls to his parents after July 8, 2008.

Defendant's attempts to collect the alleged debt have included reporting the alleged debt to the Trans Union credit reporting bureau, which shows an alleged $495.00 debt (Am. Compl. ¶ 23). As recently as July 28, 2009, Trans Union's records show that defendant has not reported the debt as being disputed by plaintiff (*Id.* ¶¶ 24-25).

## III.

Defendant seeks dismissal of Count I with prejudice, claiming that the FDCPA claim fails because: "(1) collection activities before April 28, 2008 are barred by the FDCPA's one-year statute of limitations; (2) under Illinois law Plaintiff's debt is valid because the underlying transaction was a credit transaction and not a gambling transaction . . . ; and (3) Monco Law's remaining communications with Plaintiff and collection efforts complied with the FDCPA" (Def.'s Mem. at 2). We address each of these arguments below.

### A.

We start with plaintiff's claim that defendant violated Sections 1692e(2), 1692e(5), 1692e(10) and 1692f(1) of the FDCPA by attempting to collect a debt plaintiff did not owe, namely a $153.00 alleged debt that plaintiff argues is null and void as a "gambling transaction" under the Illinois Gambling Act, 720 ILCS 5/28-7(a) ("IGA"). The IGA provides in relevant part:

> (a) All promises, notes, bills, bonds, covenants, contracts, agreements, judgments, mortgages, or other securities or conveyances made, given, granted, drawn, or entered into, or executed by any person whatsoever, where the whole or any part of the consideration thereof is for any money or thing of value, won or obtained in violation of any Section of this Article are null and void.
>
> (b) Any obligation void under this Section may be set aside and vacated by any court of competent jurisdiction, upon a complaint filed for that purpose, by the person so granting, giving, entering into, or executing the same, or by his executors or administrators, or by any creditor, heir, legatee, purchaser or other person interested therein; or if a judgment, the same may be set aside on motion of any person stated above, on due notice thereof given.

Under the IGA, it is illegal for a lender to enter into a contract for credit with a consumer when the lender participates in an unlawful gambling enterprise. However, in *Cie v. Comdata Network, Inc.*, 275 Ill.App.3d 759, 656 N.E.2d 123 (1st Dist. 1995), the court rejected the proposition that Section 28-7(a) of the IGA makes all loans for gambling void and unenforceable.

In *Cie*, plaintiffs alleged that they had obtained loans at legal gambling establishments in the form of cash advances, which they would endorse for gambling chips, betting vouchers, or cash. Plaintiffs asked the trial court to construe their loans as void and unenforceable. The trial court dismissed the complaint. The appellate court affirmed. In so doing, the *Cie* court explained Section 28-7(a) as follows:

> The plain language of section 28-7(a) limits its applicability to those contracts in which the lender participated in the unlawful gambling enterprise. There was no wager between Cie and the defendants herein. Instead, the Credit Card Defendants advanced Cie a loan through their agent, Comdata, which was to be repaid regardless of whether Cie won or lost. For Cie to claim this transaction is an illegal gambling contract misses the entire process of how the debt was incurred-pursuant to a cardholder's agreement wherein the card issuer promises to advance the cardholder funds up to a given limit and the cardholder promises to repay the loan (presumably with interest). (citation omitted). This is a simple contract having nothing whatever to do

with gambling. Accordingly, the general rule regarding gambling contracts in section 28-7(a) does not apply to cash advances such as those obtained by Plaintiff Cie.

656 N.E.2d at 125-26.

Plaintiff argues that *Cie* does not control here, because *Cie* is distinguishable from the facts of this case on two grounds: (1) "*Cie* did not involve direct funding by a credit card into an Internet gambling account customer [sic] where the only purpose and use of said account was to gamble" (Pl.'s Resp. at 5, citing Am. Compl. ¶ 20); and (2) "*Cie* decided the issue of whether **legalized** gambling cash advances are void and unenforceable under section 28-7(a) of the Gambling Act" (Pl.'s Resp. at 6) (emphasis in original). Here, by contrast, plaintiff argues that Associated, as his lender, "participated" in an "illegal" gambling enterprise by soliciting its business on the website; entering into a contract for services with the Internet site (and allegedly deriving benefits from that relationship); and agreeing to limit the use of the funds Associated transferred to consumers, such as plaintiff, for the sole purpose of gambling on the Internet site (Pl.'s Resp. at 5-6).

We find plaintiff's attempts to distinguish *Cie* unpersuasive. At the outset, we note that, although plaintiff now argues that the Internet site he used was illegal (Pl.'s Resp. at 3, 5-6), he never made that allegation in his original or amended complaint (*See, e.g.,* Am. Compl. ¶ 7, 19-20). Moreover, under *Cie*, the threshold question is not whether the gambling transaction was illegal, but rather whether the lender participated in it. *Cie*, 656 N.E.2d 125. The amended complaint offers no allegations to plausibly suggest that Associated did so in this case.

Plaintiff alleges that:

> Associated intentionally authorized and allowed cash deposits from Plaintiff's account to be transferred to the accounts of various off-shore Internet gambling company accounts for the purpose of effecting gambling transactions. Once the

6

> funds were deposited to an Internet gambling company account, said funds could only be used for gambling transactions.

(Am. Comp. ¶ 20). Those allegations do not allege "participation" by Associated in the gambling enterprise itself. At most, plaintiff alleges a business relationship between Associated and the Internet gambling site and that Associated knew that plaintiff would use the money to gamble. However, "under Section 28-7(a) mere knowledge by one party that money loaned to another is to be used for the purpose of gambling does not invalidate the transaction." *Cie*, 656 N.E.2d at 126. As in *Cie*, there is no allegation in this case of a wager between the debtor and the lender. As in *Cie*, there is no allegation in this case that Associated's right to recover its advance turned in any way on plaintiff being successful in his gambling activity. Thus, as in *Cie*, the lender here did not "participate" in plaintiff's gambling enterprise.

*Cie* expresses a common sense interpretation of Section 28-7(a) that we expect the Illinois Supreme Court would adopt if presented with the question. To hold otherwise would allow gamblers to play with free money: they could liberally borrow from lenders to finance their gambling activity, secure in the knowledge that – win or lose – they could avoid repayment of what they borrowed. We do not accept the proposition that Section 28-7(a) should be read to provide gamblers with such a safe harbor to place risk free wagers.

We hold that plaintiff has failed to plausibly allege that the portion of his debt attributable to gambling is void. Thus, plaintiff's claim that defendant violated the FDCPA by attempting to collect a void debt fails.

**B.**

Defendant claims that plaintiff's other theories of liability under the FDCPA also fail because defendant's remaining communications and collection efforts complied with the law, and because any of its conduct more than one year prior to the filing of this lawsuit may not be considered in determining whether that is so. There are two aspects of defendant's conduct that plaintiff challenges: (1) defendant's July 8, 2008, telephone call to his parents, and (2) defendant's failure to report the alleged debt to credit bureaus as disputed. We address each of those claims, and any statute of limitations issue involving them, in turn.

**1.**

We begin with the July 8, 2008, telephone call, and the defendant's statue of limitations argument. The FDCPA establishes a one-year statute of limitations "from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Here, plaintiff filed the original complaint on April 28, 2009. Thus, the one-year period within which an alleged violation must have occurred extends back to April 28, 2008. Defendant asserts that we therefore may not consider defendant's telephone calls to plaintiff's parents that allegedly occurred prior to January 11, 2008 (Def.'s Mem. 8-9). Although plaintiff has not addressed this argument, we do so on the merits and find it unavailing.

Defendant is correct that any pre-January 11, 2008 telephone calls cannot themselves be the basis for recovery under Section 1692b(3). However, the fact that any such calls fall outside the limitations period does not render them irrelevant to determining whether conduct within the limitations period is actionable. *Cf. Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir, 1999) (continuing violation exception to statute of limitations under Title VII permits acts outside period that continue inside period to be considered to show violation). Here, plaintiff asserts that

8

the July 8, 2008 call – which is within the limitations period – is the second call that creates liability. The pre-limitation calls show the context for the second call, and explain why plaintiff considers it actionable. Moreover, Section 1692b(3) says that a debt collector shall not communicate with a person other than the debtor "more than once," subject to certain exceptions that we discuss below. The statute does not say multiple contacts must *all* occur within the limitations period in order for them to be actionable. We therefore hold that plaintiff's claims based on the July 8, 2009 telephone call are not time-barred.[2]

While this allegation survives the statute of limitations defense, it nonetheless fails to state a claim. Plaintiff alleges that in a letter dated September 15, 2008, defendant admits that on January 11, 2008, an attorney purporting to represent plaintiff "called our office . . . and informed us that we were calling the wrong telephone number for the debtor" (Am. Compl. ¶ 15 and Ex. D). Plaintiff also alleges that in the letter defendant further admitted "[w]e called the debtor again on July 8, 2008 . . . when we received no information from your office" (*Id.* ¶ 16 at Ex. D).

Plaintiff alleges that this second telephone call violated Section 1692b(3) of the FDCPA, by "calling Plaintiff's parents, at a number not belonging to Plaintiff, more than once, even after being previously told not to contact the same regarding the alleged debt" (Am. Compl. ¶ 27c)). Defendant claims that the second contact falls within the exception provided by Section 1692b(3) for contacts

---

[2]Defendant also argued that any claim the debt was improperly reported to Trans Union in January 2008 also is time-barred. We agree that any reporting in January 2008 would be outside the limitations period and would not be actionable. We also conclude that, even apart from being untimely, this assertion fails to make a claim. Plaintiff alleges that defendant did not wait 30 days to report his nonpayment because there is evidence outside the pleadings showing that the debt had been reported as early as January 2008 (Am. Compl. ¶¶11-12 and Ex. C). However, the attachment which the amended complaint cites shows only that the alleged debt was placed for collection in January 2008 – not that it was reported to a credit bureau at that time. Plaintiff's memorandum in opposition to the motion to dismiss does not address this point, and does not explain how the attachment plausibly can be read otherwise. We therefore find that plaintiff's allegations are insufficient to raise a claim for premature reporting that is "plausible on its face." *Iqbal*, 129 S.Ct. at 1949.

where the debt collector "reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information." We agree with defendant.[3]

In reaching that conclusion, we treat the exception in Section 1692b(3) on which defendant relies as an affirmative defense, which defendant has the burden of proving. We also recognize that a defendant may not routinely raise an affirmative defense on a motion to dismiss. However, where a plaintiff's own allegations provide the information necessary to establish an affirmative defense, a court properly may consider it as a motion to dismiss. *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (dismissal under Rule 12(b)(6) on the basis of a statute of limitations defense may be proper where plaintiff alleges facts sufficient to establish the affirmative defense).

That is the case here. Plaintiff has attached, and made part of the amended complaint, defendant's September 15, 2008, letter explaining the reason for the July 2008 call. Portions of the letter that plaintiff does not cite in the body of his complaint establish the reasonableness of the call. For example, almost six months passed between the January 11, 2008 phone call involving defendant and an attorney purporting to represent plaintiff, and the July 8, 2008 phone call defendant placed to plaintiff's parents. During this nearly six-month period, the attorney purporting to represent plaintiff did not further contact defendant. In addition, defendant placed three telephone calls to the attorney purporting to represent plaintiff that were never returned. Under these circumstances, a second phone call to plaintiff's parents' phone number to seek out contact information was reasonable. *See also* 15 U.S.C. § 1692b(6) (permitting a call to a third party, even when the debt

---

[3]In the amended complaint, plaintiff asserts that the telephone call also violates Sections 1692e(10) and f (Am. Compl. ¶¶ 27(g) and (h)). However, plaintiff offers no argument in his brief to defend those claims, and we therefore consider them waived.

collector knows the debtor is represented by an attorney, where the attorney "fails to respond within a reasonable period of time to communication from the debt collector").

We further note that, while plaintiff alleges that defendant's phone calls to his parents' home were "repeated," he specifically alleges only one call to his parents after January 11, 2008: the July 8, 2008 call. Plaintiff does not allege that defendant made any calls to his parents after July 8, 2009. When the number of phone calls made by a creditor and the timing of those phone calls are material for purposes of determining the plausibility of the alleged violation, plaintiff must give the court more than a conclusory allegation that the calls were "repeated" to create a plausible inference that they were unreasonable. Accordingly, the Court holds that defendant's July 8, 2008 phone call to plaintiff's parents did not violate the FDCPA.

## 2.

Next, plaintiff argues that defendant violates Section 1692e(8) because it reported the alleged debt to Trans Union credit bureau without noting that plaintiff disputed it. 15 U.S.C. § 1692e(8) states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (8)  Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

Plaintiff squarely has alleged that defendant reported credit information to Trans Union, and that as of July 28, 2009 (three months after this suit was filed), defendant had not reported the debt as disputed. Defendant does not confront these allegations, and instead simply makes the sweeping

argument that its conduct "complied with the FDCPA" (Def.'s Mem. at 8). That undeveloped and conclusory argument is unpersuasive. Defendant offers no explanation why sending credit information to Trans Union is not a communication within the meaning of Section 1692e(8), defendant allegedly sent to Trans Union, or why defendant's alleged failure to report to Trans Union that plaintiff disputed the alleged debt does would not – if true – violation that provision of the FDCPA Thus, this small piece of Count I survives the motion to dismiss.

## CONCLUSION

For the reasons stated in this opinion, the Court directs the Clerk of the Court to grant defendant's motion to dismiss Count I of the Amended Complaint (doc. # 21) is denied in part and granted in part. The motion is denied as to plaintiff's claim that defendant violated Section 1692e(8) of the FDCPA by failing to report to Trans Union that plaintiff disputed the alleged debt in question; in all other respects, Count I is dismissed with prejudice. The matter is set for a status hearing on January 12, 2010 at 9:00 a.m. Prior to that status hearing, the parties are directed to seriously discuss settlement.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: December 7, 2009**